Thank you, Judge. The next matter on our calendar is Jesse Snyder versus Andrew Saul. And I understand that one of the attorneys for Mr. Snyder is arguing by phone. Is that correct? Yes, Your Honor. This is Mark Snyder and I'm here on the phone. Okay, you may proceed. Thank you. This case goes back to 2013 when my client applied for SSI and Social Security and it was remanded once by the federal court and we're here on the second appeal. And the ALJ was ordered in the remand to properly determine my client's limitations and residual functional capacity or RFC. And in particular, the remand order asked the ALJ to explain the weight given to psychiatrist Rita Clark and why he rejected parts of her opinion. She had opined that my client had moderate difficulties in maintaining concentration, persistence, and pace. And as a production or time requirements. And on remand, the same ALJ, Judge Stephen, did find that my client had moderate limitations in all four areas of mental functioning in the listings, in understanding, remembering, and applying info, in interacting with others, in the ability to the other examining sources agreed with this, although a few found marked limitations in the ability to concentrate and persist. And all of the treating and examining sources agreed that my client had moderate limitations in sitting, standing, walking, lifting, bending, pushing, pulling, and handling. And then my client's current prescribing nurse practitioner, who is an acceptable source based on the second claim, which was after the March 2017 changes, she found that he had marked limitations in the ability to work at a consistent pace based on his in any way exaggerate his mental limitations. And despite all this, the ALJ only limited my client to frequent contact with coworkers, supervisors, and the public, which is over two thirds of the time, and found he couldn't perform high production rate pace, which is very different than no strict production or time requirements. And the ALJ limited to light work. So weighing the evidence from both sides, no reasonable person could conclude that Mr. Snyder had the RFC to perform any work because of the combination of his mental and physical limitations and the ALJ error by not was unable to perform any work, not even sedentary. Light work requires the ability to lift up to 20 pounds and walk and stand up to six hours. And none of the examining sources opined this. And the two time examining consultative doctor, Dr. Wasif, twice found that he had moderate limitations and exertional limits and that which do not support a finding of light work. Moderate limitations mean a person can perform the activity occasionally, which is one third of the time. Counsel, the ALJ found that Snyder was able to handle his personal care, dress himself, prepare simple meals, and occasionally grocery shop, travel, walk, use public transportation, ride a bicycle and ride a car. You agree with that? No, I agree that he found that. I disagree that that shows that somebody could work. The riding a bicycle part were some check marks that he never even talked to my client about. And that was back in 2013. He did not say that again when he reapplied in 2017. But the law is clear. This court has said many times that it's not substantial evidence that a person can marginally perform some activities. You don't have to be an invalid to be disabled under the law. He had a severe spinal impairment that required a laminectomy for the first hearing. And the judge found that that was not enough to be disabled. He had an MRI showing a nerve impingement. He consistently reported pain of five to seven out of the one to ten scale before and after surgery. And according to the Mayo Clinic, pain of four to six would interfere with activities of daily living and pain of seven is extreme and is per se disabling. He credibly testified he has to spend most of the day laying down because of pain. For years he was seeing a pain doctor, Dr. Kwon, who opined he could only sit or stand for 15 minutes. He did report some improvement after surgery and then Dr. Kwong noted it got worse again. He was very limited by depression, anxiety, schizoaffective disorder. The ALJ didn't incorporate that in his RSC. But the judge erred by not crediting his testimony. It was strongly supported by the objective, the radiological, and the clinical evidence. He never exaggerated. He admitted at one point that maybe he could work at 50% capacity. He never said his pain was 10 out of 10. Here is a guy who needed a laminectomy, who had a nerve impingement, and he tried to be honest about what his limitations were. And he tried to be honest about what his activities were. He needed help with shopping. He needed help getting dressed. He didn't exaggerate. And this was not conservative treatment. There is no way that a laminectomy, that getting opioids, getting Suboxone and to liberally apply the substantial evidence test. This is a remedial act that is very favorable to claimants. And based on the record, I would request you remand for payment and not just for a new hearing. It has been since 2013 that he has applied for benefits. Thank you. Thank you, counsel. We will hear from the commissioner. Thank you, your honors. May it please the court. My name is Andrea Leckleitner and I am here on behalf of the commissioner. Your honors, under the deferential standard of review, this decision should be affirmed. Substantial evidence supports the ALJ's decision that Snyder could do light work. Counsel, how many jobs there are in the economy to work as cafeteria assistants? Do you think we still have cafeterias in this day and age? Your honor, the vocational expert indicated that there were tens of thousands of such jobs. She identified not only the cafeteria attendance job, but also a code attendant job and a parking attendant jobs. And altogether in the aggregate, she identified tens of thousands of such jobs. Let's take a look at a parking attendant. If you're limited in your ability to stand up and walk around, well, if you have to park cars, you're jumping up all the time and you're walking around and you have no control of when you're standing up or when you're sitting down. Is that correct? Thank you, your honor. Actually, Mr. Snyder stated that walking around is the best thing for him. Now we have several opinions that indicate that he could do the Dr. Fuchs, his own treating physician, Dr. Kwong, and Nurse Dempsey indicated that he had only moderate limitations in standing. And also Nurse Dempsey indicated that he was only precluded from labor intensive jobs. And this suggests that he was able to do lesser intensive work, such as in this case, parking attendant or code attendant. A code attendant job, for example, only requires him to give somebody a ticket to take their belongings and put them away. And in this case, the ALJ also indicated that the claimant had a limitation in a, or rather a sit-stand option. So he could stand for two hours and change positions for five minutes, sit for one hour and change positions. So he factored in a limitation in standing and walking in addition to restricting him to light work. And this finding is supported not only by but the vast majority, in fact, all medical opinions in the record from Dr. Boucher, from Dr. Fuchs, from Dr. Wasif who examined him on two occasions before and after his surgery, from Dr. Kwong, his own physician, from Nurse Dempsey, his own nurse practitioner, as well as from the treatment notes, which indicate that he had a normal gait, normal motor strength, intact sensation, negative straight leg raising, as well as from his vast of daily living, which included, as was mentioned, riding a bicycle, and that was in 2017, not in 2013, as well as other things such as moving furniture, using a table saw, going out shopping, using public transportation. He was able to engage. He was attending his daughter's home games. He was going to church. He was taking her fishing. He was actively engaged in all types of activities of daily living. This suggests, as a whole, that he could do light work. The ALJ did exactly what he was supposed to do in this case. He was tasked with weighing the evidence and an RFC finding consistent with the record as a whole, and he did just that. He looked at the medical opinions. He looked at the activities of daily living, the examination finding, the treatment records, which actually showed that he did improve after his surgery, as Mr. He indicated, for example, that his gabapentin medication was providing him with tremendous relief. That is in the record, page 421. He also repeatedly stated that his medications were providing him with relief and were improving, were helping to improve his functional abilities. So, the ALJ was allowed to look at all of this evidence. That's, in fact, what he was tasked to and to reach an RFC finding that was consistent with the record as a whole. While Mr. Schneider had stressed his complaints of pain, yes, the ALJ actually looked at the complaints of pain and noted that, yes, on some occasions, he rated them as a seven, but on other occasions, he rated his pain as much lower. So, overall, based on the record in its entirety, the ALJ reasonably determined that he could do light work. Now, similarly, the ALJ correctly evaluated Schneider's mental impairment, and once again, he had a multitude of opinions, far more than we have in most social security cases, and those provided support for his finding that Schneider could do simple work that was lower in stress. In this case, it didn't require a high production rate. It required only frequent rather than constant interaction with complex tasks on occasion. This finding is supported by the opinion of Dr. Clark, who reviewed the evidence in the record. It's supported by his own physician opinions of nurse Dempsey and Dr. Kwong, who actually evaluated his mental status and found that in most areas, he had no limitations other than one moderate limitation in keeping on consistent pace. Also, the ALJ considered Dr. Melcher's opinion and Dr. Hartman's opinions. These are consultative examiners, and they found that he had some mild and some moderate limitations, and the ALJ also considered the opinion of Dr. Harris, who was a state agency physician who reviewed the evidence of record and also assessed at most moderate limitations, and finally, nurse Grice, who for the most part also agreed with all these other practitioners and in most areas found a moderate limitation. But she thought, nurse Grice thought he was disabled and couldn't work, didn't she? And the ALJ ignored her opinion because she was not a doctor. Isn't that right? That is not correct. He did not ignore her opinion. He actually evaluated the opinion and provided good reasons for according the marked limitations less than significant weight. He noted that she was not an acceptable medical source. Therefore, at that time, this is a case that was filed prior to March 27, 2017. She was not an acceptable source. Her opinion technically is not considered a medical opinion. Also, as a district judge noted, she evaluated him one time when she rendered her opinion. Altogether, she saw him two times within the relevant period. And the ALJ specifically noted that her opinion was not consistent with the record as a whole. It was not supported by examination findings, which in general showed that he had a cooperative demeanor, logical thought processes, generally intact attention and concentrations, although there was some variation in that area. And her opinion was at odds with the opinions of all the other practitioners I mentioned who found only mild to moderate limitations. It was also internally inconsistent because while she mentioned the marked limitation, his ability to keep on pace, she also stated that there was only a moderate limitation in maintaining a schedule and completing a workday. I think I was more in her opinion, not only an internal inconsistency, but an inconsistency with that opinion and the record as a whole. So overall, just to sum up, the ALJ did exactly what he was tasked to do. He evaluated a multitude of medical opinions and he gave more weight to those that he found were consistent with the record as a whole. In most respects, he agreed in terms of the physical limitations, he generally agreed with most of the opinions and gave each of them some weight. In terms of the mental limitation, the ALJ did not find that Nurse Grice's opinion merited weight, but he certainly did not ignore it. And in fact, although he didn't find that she had a marked limitation in maintaining, in completing a workday, he actually restricted, he actually, in some respect, accounted for her opinion by restricting Snyder to work that did not require high production pace and that was lower, that was simple. And in these ways, he provided an environment where Snyder was better able to keep on pace. So he didn't agree with that part of her opinion, but some of the limitations that he factored in aligned with difficulties in maintaining pace. So unless the court has further questions, I will rest on the brief. Thank you, counsel. Thank you, counsel. Mr. Snyder, you have two minutes. Yes, thank you, your honor. My client's testimony was fully supported by the objective and clinical evidence. He testified he had to lay down most of the day, which would preclude all work. A nurse, psychiatric nurse practitioner, Grace, who was the prescriber in 2019, is an acceptable source because that was, that the second claim was consolidated with the first claim. So she should get more weight than the non-examining state doctors. If she gets more weight, does your client prevail? Uh, well, she should, but even based on the moderate limitations, even based on Judge Clark, my client should prevail because there is a difference between no production rate work, no strict production or time work, and no high production. And she was saying that he couldn't have real production rates. Here's somebody because of limits of focus and concentration really wasn't able to work on a consistent level. You know, if we look at both sides of the evidence and look at what detracts from the findings, uh, based on the moderate, uh, limitation, mental limitations, he couldn't perform any work on a full-time basis. Based on Dr. Wasif's moderate physical findings, he's unable to work. But really what it comes down to, there is not substantial evidence to discredit what he said. He was very credible and very consistent over the years. The judge never relied on anything about moving furniture or saws, and he never asked if he was going to rely on that or the bicycle, alleged bicycle riding. He should have asked my client about it, which he didn't do. No, no one ever said he could lift 20 pounds. None of the examining sources said Mr. Snyder could lift 20 pounds or stand and walk for six hours a day. I've seen no case reported in the Second Circuit and maybe any place in the country where somebody who six months after a hearing needed a laminectomy was found to have the RFC to perform light work. Thank you. Thank you, counsel. We'll reserve this.